**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ISMAEL PASTRANA,

          Petitioner,

  - v -                Civ. No. 9:03-CV-302
                       (LEK/RFT)

MICHAEL K. NALLEY,

          Respondent.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ISMAEL PASTRANA<br>Petitioner, *Pro Se*<br>34439-054<br>FCI Fort Dix<br>P.O. Box 7000<br>Fort Dix, NJ 08640 | |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>Northern District of New York<br>Attorney for Respondent<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, N.Y. 13261 | CHARLES E. ROBERTS<br>Assistant United States Attorney |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

  *Pro se* Petitioner Ismael Pastrana brings this Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241 alleging that Respondent utilized a false and misleading Presentence Investigation Report ("PSR") in regards to an obstruction of justice notation to enhance his custody classification without due process, thus causing him to be ineligible for a 500 hour drug program, which could have resulted in a one-year reduction to his sentence. Dkt. No. 1, Pet. at pp. 3 & 5.

## I.  BACKGROUND

On December 20, 1994, Petitioner was sentenced in the United States District Court for the Southern District of New York based upon a plea agreement.  Pet., Exs. B, Plea Lt. to John Jacobs, Esq., dated Aug. 8, 1994, & C, Sentencing Tr., dated Dec. 20, 1994.  Plaintiff plead guilty to 1) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; and 2) conspiracy to launder drug money in violation of 18 U.S.C. § 371.  *Id.*, Ex. B, Plea Lt. to Jacobs; Dkt. No. 7, Ann H. Zgrodnik Decl., dated May 23, 2003, Ex. 1F, Judgment, dated Dec. 20, 1994.  In accordance with these two counts, there were two additional counts for forfeiture: 1) forfeiture of heroin proceeds under 21 U.S.C. § 853; and 2) forfeiture of money laundering assets under 18 U.S.C. §§ 846 and 1956.  Pet., Ex. G, PSR, dated Dec. 5, 1994; Zgrodnik Decl., Ex. 1F, Judgment.  As a result of the plea agreement, Petitioner was sentenced to 170 months of incarceration to be followed by a five-year period of supervised release.  Sentencing Tr. at p. 19.

Prior to an inmate's incarceration in a facility by the Federal Bureau of Prisons, an inmate is evaluated based upon his security level and program needs.  Zgrodnik Decl., Ex. 1H, Program Statement, dated Sept. 3, 1999, at p. 1.  The security levels are designated as minimum, low, medium, high, and include an administrative category.  *Id.*, Ex. 1H, Program Statement at Chapter 1, p. 1.  The assignment to an institution is based on: 1) the level of security and supervision the inmate requires; 2) the level of security and staff supervision an institution can provide; 3) the inmate's program needs such as substance abuse, medical treatment, etc.; and 4) administrative factors that include the level of overcrowding, the inmate's release residence, judicial recommendations, separation needs, and increased security measures to protect victims or witnesses.  *Id.*

A custody classification is also administered to an inmate. *Id.*, Ex. 1H, Program Statement at Chapter 8, p. 1. Custody classification is "a procedure whereby inmates are assigned levels according to their criminal histories and institutional behavior/adjustment." *Id.* The custody level indicates the amount of staff supervision required for an inmate within and beyond the confines of the facility. *Id.* The inmate's custody classification is determined at the first program review following his initial classification. *Id.* Reviews are subsequently conducted every twelve months and ordinarily occur "in conjunction with every second program review." *Id.* There are four custody levels established for inmates: 1) maximum; 2) in; 3) out; and 4) community, which is the lowest level. *Id.*, Ex. 1H, Program Statement at Chapter 1, p. 2. In conjunction with the custody classification, public safety factors are taken into account in regards to security measures to ensure the safety of the public. *Id.*, Ex. 1H, Program Statement at Chapter 7, p. 1. The eleven public safety factors categories are: 1) disruptive group; 2) greatest severity offense; 3) sex offender; 4) threat to government officials; 5) deportable alien; 6) sentence length; 7) violent behavior; 8) serious escape; 9) prison disturbance; 10) juvenile violence; and 11) serious telephone abuse. *Id.*, Ex. 1H, Program Statement at Chapter 7, pp. 1-5.

On January 12, 1995, a security designation form was completed on Petitioner upon entering the Federal Bureau of Prisons. *Id.*, Ex. 1G, Security/Designation Data, dated Jan. 12, 1995. The custody level issued was "in," which is the second highest level assigned and requires the second highest level of security and staff supervision. *Id.*, Exs. 1G, Security/Designation Data, & 1H, Program Statement at Chapter 2, p. 2. If the designated level is "in," an inmate is assigned to regular quarters and is eligible for regular work assignments and activities under a normal level of supervision; however, such inmate is not eligible for work details or programs outside of the

facility's secure perimeter.  *Id.*, Ex. 1H, Program Statement at Chapter 2, pp. 2-3.  Petitioner's public safety factors were the greatest severity offense and sentence length.  *Id.*, Ex. 1G, Security/Designation Data.[1]  The security designation form for Petitioner also noted that, in addition to the drug convictions, there had been a threat to a co-defendant's family.  *Id.*, Ex. 1G, Security/Designation Data.  All of this information was found in Petitioner's PSR, which stated under the heading for "Adjustment for Obstruction of Justice" that subsequent to his arrest and on remand for his "instant offense," Petitioner threatened a confidential informant in the case which was delivered through another individual being prosecuted for a separate heroin distribution offense in the Southern District of New York.  *Id.*, Ex. 1E, PSR, dated Dec. 5, 1994, at p. 42, ¶ 191.  Based upon all the information, his scored security level was medium.  *Id.*, Ex. 1G, Security/Designation Data.

On August 14, 2002, Petitioner was transferred from the Federal Correctional Institution in Elkton, Ohio to Ray Brook, New York.  *Id.*, Ex. 1A, Public Information Inmate Data, dated May 9, 2003.  If an inmate is transferred to another facility, Bureau of Prisons policy calls for a program review of an inmate within four weeks of arrival to the new facility.  *Id.*, Ex. 1H, Program Statement, dated Mar. 11, 1999.  On September 10, 2002, a program review was conducted with Petitioner.  *Id.*, Ex. 1I, Custody Classification Form, dated Sept. 10, 2002.  Once again, the public safety factor given Petitioner was for the greatest severity offense that rendered a security level of medium.  *Id.*

---

[1] A drug offender possessing a certain amount of a certain drug will be placed within the greatest severity category and must be housed in a least a low security level institution, unless the public safety factors have been waived. *Id.*, Ex. 1H, Program Statement at Chapter 7, p. 1 & App. B, p. 1.  In terms of the sentence length, an inmate who has more than ten years remaining to serve his sentence must be housed in at least a low security level facility and if an inmate has more than twenty years remaining, the inmate must be in at least a medium security level institution, unless the public safety factors are waived.  *Id.*, Ex. 1H, Program Statement at Chapter 7, p. 4.

Petitioner alleges that on or about September 10, 2002, certain staff members at Ray Brook "solicited" Petitioner to participate in a five hundred (500) hour drug program, which, if successfully completed, would have entitled him to a one-year reduction in sentence and would qualify him for a community custody placement. Pet. at Ground One, p. 5. To that end, Petitioner was notified that due to a two-point enhancement, seemingly resulting from the obstruction of justice notation in the PSR, he was not provisionally eligible for an early release. *Id.*, Ex. A, Attach. J at p. 2, Provisional Eligibility. During the course of his sentencing by the Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, the prosecution stated that they were "not asking the Court to rely on the adjustment for role in the offense or adjustment for obstruction of justice or anything like that." *Id.*, Ex. C, Sentencing Tr., dated Dec. 20, 1994, at p. 16, lines 10-12. The court adopted the PSR in part, but stated that it rejected the findings in the PSR that included the adjustment for obstruction justice. *Id.*, Ex. C., Sentencing Tr. at p. 17, lines 7-25; Zgrodnik Decl., Ex. 1E, PSR at ¶ 191. The court resumed its adoptions of the findings in the PSR at paragraph 203. Pet., Ex. C., Sentencing Tr. at p. 18, lines 1-5.

On October 3 and 10, 2002, Petitioner sought a review of his custody classification. Zgrodnik Decl., Ex. 1K, Inmate Req. to Staff Member, dated Oct. 3, 2002, & Informal Resolution, dated Oct. 10, 2002. On October 16, 2002, Terry Mills responded to the request for a review and stated that a review of the PSR indicated Petitioner received points for obstruction of justice for threatening another individual, therefore the greatest severity offense level would remain unchanged. *Id.*, Ex. 1K, Informal Resolution, dated Oct. 10, 2002, Attach.

In addition to the October 3rd and 10th requests, Petitioner filed, on September 20, 2002, a request for an administrative remedy seeking a review of his custody classification. *Id.*, Ex. 1B,

Req. for Administrative Remedy, dated Sept. 20, 2002. Petitioner claimed that his due process rights were being violated because the Bureau of Prisons was using inaccurate information set forth in the PSR and that his classification should be high instead of greatest. *Id.* On October 31, 2002, the Warden denied the request citing to the "Security Designation and Custody Classification Manual" for the proposition that the severity of the inmate's current offense is determined by the most severe documented instant offense behavior, which from the PSR was that Petitioner threatened the life of another. *Id.*, Ex. 1B, Administrative Remedy Response, dated Oct. 31, 2002. The Warden stated the severity level of greatest was warranted and the request was denied. *Id.* Petitioner subsequently completed the appeals of his administrative remedies. *See* Exs. 1C, Regional Administrative Remedy Appeal, dated Nov. 5, 2002, & 1D, Central Office Administrative Remedy Appeal, dated Dec. 18, 2002. This Petition followed.

## II. DISCUSSION

Petitioner contends that his due process rights under the Fifth Amendment[2] were violated when the Federal Bureau of Prisons utilized the PSR's obstruction of justice notation to enhance his custody classification thereby preventing him from entering a 500 hour drug program, which inevitably deprived him of the opportunity to receive a one-year reduction in his sentence. Pet. at Ground One, p. 5.

The Due Process Clause of the Fifth Amendment states that "no person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. To present a due

---

[2] Since Petitioner is imprisoned in a federal institution, the Fifth, and not the Fourteenth Amendment of the United State Constitution would apply to his due process violation claim. *See Pugliese v. Nelson*, 617 F.2d 916, 918 n.2 (2d Cir. 1980). The analysis of a due process claim under the Fifth Amendment is analogous to that under the Fourteenth Amendment. *See Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 365 (S.D.N.Y. 2005).

process claim, a petitioner must establish that he possessed a constitutionally protected liberty interest. *Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 365 (S.D.N.Y. 2005) (citing *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *Reno v. Flores*, 507 U.S. 292, 301-02 (1993); & *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784 789 (2d Cir. 1999)).

The Supreme Court has held, and the Second Circuit has affirmed, that prisoners do not have a liberty interest under the Federal Constitution in "prisoner classifications and eligibility for rehabilitative programs in the federal system." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980);[3] *see also Bagarozy v. Wiley*, 1999 WL 33504439, at *3 n.7 (N.D.N.Y. Oct. 26, 1999) (discussing the 500 hour drug program and accompanying one-year sentence reduction and noting that "[t]he Bureau of Prisons has full discretion for determining which inmates enter the drug treatment program" and that "[p]risoners have no statutory or constitutional entitlement sufficient to invoke due process for prisoner classification and eligibility for rehabilitative programs in the federal system" (citing *Moody* and *Pugliese*)). This is so because Congress has given federal prison officials full discretion to determine prisoner classifications. *Moody v. Daggett*, 429 U.S. at 88 n.9; *see also United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) (stating that the court "has no authority to order that a convicted defendant be . . . placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons") (cited in *Fisher v. Goord*, 981 F. Supp. 140, 176 (W.D.N.Y. 1997)); *Bagarozy v. Wiley*, 1999 WL 33504439, at *3 n.7. The Second Circuit has noted that "judicial intervention into the classification of prisoners for monitoring and control

---

[3] The holding in *Pugliese* was reaffirmed in a more recent, unpublished opinion by the Second Circuit in *Green v. Armstrong*, 1999 WL 642910, at *1 (2d Cir. Aug. 20, 1999).

purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities." *Pugliese v. Nelson*, 617 F.2d at 925. The Supreme Court further noted that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted) (cited in *Pugliese v. Nelson*, 617 F.2d at 925).

Here, despite the fact that the sentencing court did not take into account the PSR's obstruction of justice notation in assessing the duration of Petitioner's confinement, the Bureau of Prisons' use of this information in the PSR to determine custody classification would not constitute a violation of Petitioner's due process rights. Pet., Ex. C., Sentencing Tr. at p. 17, lines 7-25; Zgrodnik Decl., Ex. 1E, PSR at ¶ 191. Petitioner has no liberty interest in the classification received at the institution nor does he have a liberty interest in his eligibility for the 500 hour drug treatment program, which could result in a one-year reduction in his sentence.

Therefore, it is recommended that the Petition be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 20, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge